**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Sanjeev Lath

    v.                            Case No. 17-cv-075-JL

City of Manchester,
New Hampshire

**REPORT AND RECOMMENDATION**

    Before this magistrate judge for consideration is Sanjeev Lath's motion for leave to amend his First Amended Complaint ("FAC").  For the reasons that follow, Lath's motion should be granted in part and denied in part.

**Background**

    This action first arose out of an incident that occurred on November 22, 2015, at the Oak Brook Condominium, where Lath is a unit owner.  At the time of the incident, Gail Labuda – who has since died – was Lath's neighbor.  Cynthia Camp is Labuda's daughter, and Michael Camp is Cynthia's husband.  As described in Lath's proposed Second Amended Complaint ("SAC"),[1] the

---

[1] The pleading under consideration is actually Lath's second SAC.  Back in March, he filed a first SAC, purportedly as of right.  Because his filing was procedurally improper, his first SAC was dismissed, but without prejudice to filing a motion for

November 22 incident unfolded in the following manner.

While Lath was entering his residence, Ms. Camp made a false report to the Manchester Police Department ("MPD") that Lath had kicked the door to Gail Labuda's unit.[2]  After Ms. Camp called the police, an altercation ensued between the Camps and Lath.  During or after the altercation, Mr. Camp recorded audio and video of Lath on his smartphone.  He did not have permission to do so.

In response to Ms. Camp's call to the MPD, Officers Andrew Choi and Austin Goodman arrived on the scene.  According to Lath:

> In his investigation report Choi stated that Labuda, Cynthia Camp and Michael Camp watched Lath "through the peep hole of Labuda's door.  While she [Cynthia Camp] was watching Lath come up the stairs, she watched as Lath reared up his leg and forcefully kick[ed] the wall next to Labuda's door".
>
> Labuda and the Camps went on to allege that she "watched Lath look down the stairs, smirk at someone else, and violently kick the same spot again".

SAC (doc. no. 16-1) ¶¶ 19-20.

---

leave to amend his FAC that complies with the applicable federal and local rules.

    [2] In his FAC, Lath alleged that the incident took place while he was returning from a shopping trip and that he may have dropped a bag or two outside Labuda's unit, and that the contents may have bounced against the wall outside her unit.

Initially, Lath sued the City of Manchester in the
Hillsborough County Superior Court asserting one or more claims
under state law.  Then, he amended his complaint to assert
claims against the City for: (1) violating his rights under the
Fourth Amendment to the U.S. Constitution (Count 1);[3] (2)
trespassing (Count 2); and (3) failing to preserve evidence
pertaining to the November 22 incident (Count 3).  After Lath
added his Fourth Amendment claim, asserted through the vehicle
of 42 U.S.C. § 1983, the City removed his action to this court.
The claims that the City removed are not under consideration in
this report and recommendation, which is why the court has not
recited the facts underlying them.

In the motion that is under consideration, Lath seeks to
amend his FAC to add: (1) a claim for malicious prosecution
against the City (Count 4); (2) a state-law claim for unlawful
wiretapping (Count 5); (3) a claim for invasion of privacy
(Count 6); (4) a claim for abuse of process (Count 7); (5) a
claim for malicious prosecution against Labuda's estate (Count
8); and (6) a civil rights conspiracy claim under 42 U.S.C. §

---

[3] From this point forward, Lath's claims shall be referred
to in accordance with the numbering system in this paragraph
rather than the system in the SAC, which jumps from Cause 2 to
Cause 4.

1985 (Count 9).  In addition to seeking to add a new claim

against the City arising out of the aftermath of the November 22

incident, Lath also seeks to add claims to his FAC that involve

both new factual allegations and new defendants.


## Discussion

Under the circumstances of this case, Lath "may amend [his

FAC] only with the opposing party's written consent or the

court's leave."  Fed. R. Civ. P. 15(a)(2).  That said, leave to

amend should be freely given "when justice so requires."  Id.

"A proposed amendment seeking to add new parties 'is technically

governed by [Federal Rule of Civil Procedure] 21,' but the 'same

standard of liberality' applies under either rule."  Design

Basics, LLC v. R.J. Moreau Cmtys., LLC, No. 15-cv-309-LM, 2016

WL 1239256, at *1 (D.N.H. Mar. 29, 2016) (quoting Podkulski v.

Doe, No. 11-cv-102-JL, 2014 WL 5662780, at *1 (D.N.H. Nov. 3,

2014); citing Garcia v. Pancho Villa's of Huntington Vill.,

Inc., 268 F.R.D. 160, 165 (E.D.N.Y. 2010)).

Notwithstanding the standard of liberality established by

Rule 15(a)(2), "a district court may deny leave to amend when

the request is characterized by undue delay, bad faith,

futility, or the absence of due diligence on the movant's part."

Mulder v. Kohl's Dep't Stores, Inc., 865 F.3d 17, 20 (1st Cir.
2017) (quoting Nikitine v. Wilmington Trust Co., 715 F.3d 388,
390 (1st Cir. 2013); citing Palmer v. Champion Mortg., 465 F.3d
24, 30 (1st Cir. 2006); Foman v. Davis, 371 U.S. 178, 182
(1962)) (internal quotation marks and brackets omitted).  In the
context of Rule 15(a)(2), "futility means that the complaint, as
amended, would fail to state a claim upon which relief could be
granted," Glassman v. Computervision Corp., 90 F.3d 617, 623
(1st Cir. 1996).

A plaintiff fails to state a claim upon which relief can be
granted when, with all reasonable inferences drawn in his favor,
the allegations in his complaint, taken as true, do not present
"sufficient factual material to state a facially plausible
claim." Vargas-Colón v. Fundación Damas, Inc., 864 F.3d 14, 23
(1st Cir. 2017) (citing O'Shea ex rel. O'Shea v. UPS Ret. Plan,
837 F.3d 67, 77 (1st Cir. 2016)).  "[I]f the proposed amendment
would be futile because, as thus amended, the complaint still
fails to state a claim, the district court acts within its
discretion in denying the motion to amend." Abraham v. Woods
Hole Ocean. Inst., 553 F.3d 114, 117 (1st Cir. 2009) (quoting
Bos. & Me. Corp. v. Hampton, 987 F.2d 855, 868 (1st Cir. 1993)).

This section examines the claims that Lath seeks to add one by one and then concludes by listing all the claims that will be a part of this action going forward if the report and recommendation is adopted by the district judge.

**A.    Count 4**

Proposed Count 4, labeled Cause 5 in Lath's SAC, is a claim for malicious prosecution against the City arising from the Manchester City Solicitor's decision to nol pros a charge of criminal mischief that had been brought against Lath as a result of the incident on November 22, 2015.

Under the common law of New Hampshire, "[t]he four elements of a claim for malicious prosecution are: (1) the plaintiff was subjected to a criminal prosecution or civil proceeding instituted by the defendant; (2) without probable cause; (3) with malice; and (4) the prior action terminated in the plaintiff's favor." Farrelly v. City of Concord, 168 N.H. 430, 445 (2015) (citing Ojo v. Lorenzo, 164 N.H. 717, 726 (2013)). With regard to the second element,

> [i]t is well settled that in the context of a malicious prosecution claim, probable cause is defined as "such a state of facts in the mind of the prosecutor as would lead a [person] of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty." Stock v. Byers, 120 N.H. 844, 846 (1980) (citing Cohn v. Saidel, 71 N.H. 558, 567 (1902)). The

plaintiff is required to prove that the defendant,
when he initiated the underlying suit against the
plaintiff, "did not possess such knowledge of facts as
would lead a [person] of ordinary caution and prudence
to believe that [he or she] had a cause of action
against the plaintiff." Cohn, 71 N.H. at 567
(quotation omitted).

Paul v. Sherburne, 153 N.H. 747, 749–50 (2006) (parallel

citations omitted).  In other words, probable cause "depends not

upon the accused's guilt or innocence of the crime charged but

upon the prosecutor's honest and reasonable belief in such guilt

at the time the prosecution is commenced." Stock, 120 N.H. at

846 (citing MacRae v. Brant, 108 N.H. 177, 180 (1967)).  As for

the relationship between the second and fourth elements, i.e.,

probable cause for the plaintiff's prosecution and termination

of the prosecution in his favor:

> The law does not, and should not, allow recovery
> in tort by all persons accused of crimes and not
> convicted.  There is no guarantee in our society that
> only guilty persons will be accused and arrested.
> Baker v. McCollan, [443] U.S. [137, 145] ([] 1979).
> Except in extreme cases, for which malicious
> prosecution or abuse of process are adequate remedies,
> a person wrongfully accused of a crime must bear that
> risk, lest those who suspect wrongful activity be
> intimidated from speaking about it to the proper
> authorities for fear of becoming embroiled themselves
> in the hazards of interminable litigation.  See L.
> Green, Judge and Jury 338 (1930); Harper, Malicious
> Prosecution, False Imprisonment and Defamation, 15 Tex.
> L. Rev. 157, 168 (1937).

McGranahan v. Dahar, 119 N.H. 758, 769 (1979) (parallel citations omitted).

Here, Lath has not alleged facts sufficient to establish the second element of his claim, i.e., that he was prosecuted by a defendant who lacked an honest and reasonable belief that he was guilty of criminal mischief at the time his prosecution was initiated.  Under the New Hampshire Criminal Code, "[a] person is guilty of criminal mischief who, having no right to do so nor any reasonable basis for belief of having such a right, purposely or recklessly damages property of another."  N.H. Rev. Stat. Ann. ("RSA") § 634:2, I.  In his SAC, Lath alleges that after the November 22 incident, Officer Choi wrote an investigation report in which he "stated that Labuda, Cynthia Camp and Michael Camp watched Lath 'through the peep hole of Labuda's door . . . as Lath reared up his leg and forcefully kick[ed] the wall next to Labuda's door."  SAC ¶ 19.  In his report,[4] Officer Choi also stated that he noticed two shoe prints

---

[4] Lath submitted Officer Choi's report as an exhibit to his first SAC.  Given his references to that report in the SAC currently under review, that report is fairly incorporated into the current SAC and, as a result, may be considered at this juncture.  See Chalifoux v. Chalifoux, --- F. App'x ---, ---, 2017 WL 3172414, at *3 (1st Cir. 2017) (citing Newman v. Krintzman, 723 F.3d 308, 309 (1st Cir. 2013); Schatz v. Rep. State L'ship Comm., 669 F.3d 50, 55-56 (1st Cir. 2012)) (unpublished per curiam table decision).

on the wall outside Labuda's unit and that those prints matched the treads on the bottom of the sandals that Lath was wearing at the time.  See Second Am. Compl., Ex. 1 (doc. no. 4-3), at 7 of 24.  Because Officer Choi's report necessarily formed the basis for Lath's prosecution, Lath himself has alleged facts that, if proven at trial, would establish that he was prosecuted by a defendant who held a reasonable belief that he was guilty of criminal mischief.  That the charge against Lath was ultimately nol prossed establishes the fourth element of a malicious prosecution claim, i.e., termination of the prosecution in Lath's favor, but says nothing about whether the prosecutor, at the outset of the prosecution, had probable cause to pursue the charge in the first place.  Similarly, the mere fact that Lath may dispute the truth of the statements by Labuda and the Camps that Officer Choi included in his report is immaterial unless he can allege facts showing that it was unreasonable for Officer Choi to credit those reports, and he has not done so.  Because Lath has failed to allege sufficient facts to establish that he was prosecuted without probable cause, Count 4 does not state a claim upon which relief can be granted.  For that reason, as to Count 4, Lath's motion for leave to amend should be denied.

**B.    Count 5**

In proposed Count 5, labeled Cause 6 in Lath's SAC, "Lath alleges that Defendants Michael and Cynthia Camp unlawfully and without [his] consent intercepted oral communication, telecommunication aurally or by the use of an electronic and/or mechanical device(s)."  SAC ¶ 63.  Count 5 is based upon the November 22 incident described above, and this additional allegation: "On November 30, 2015 upon return from his job and entering his unit, Cynthia Camp and Michael Camp audio and video taped Lath while Lath was on the phone with his psychiatrist." SAC ¶ 22.  According to Lath, the Camps are liable to him for violating RSA 570-A.

RSA 570-A:11 provides a private cause of action to "[a]ny person whose telecommunication or oral communication is intercepted . . . in violation of this chapter . . . against any person who intercepts . . . such communications."  Based upon the factual allegations in paragraphs 14 and 22 of his SAC, Lath should be granted leave to amend his FAC to add Count 5, framed as a claim under RSA 570-A, arising from the eavesdropping and/or recording that the Camps allegedly engaged in on November 22 and November 30, 2015.

C.     **Count 6**

In proposed Count 6, labeled Cause 7 in Lath's SAC, Lath
asserts a claim for invasion of privacy against the Camps based
upon the same conduct alleged in Count 5.  Lath should be
granted leave to amend his FAC to add a claim for invasion of
privacy based upon the November 30 incident, but not the
November 22 incident.

New Hampshire recognizes a cause of action for invasion of
privacy arising from "intrusion upon the plaintiff's physical
and mental solitude or seclusion."  Lovejoy v. Linehan, 161 N.H.
483, 485 (2011) (quoting Hamberger v. Eastman, 106 N.H. 107, 109
(1964)).  However, "[a] tort action based upon an intrusion upon
seclusion must relate to something secret, secluded or private
pertaining to the plaintiff."  Remsburg v. Docusearch, Inc., 149
N.H. 148, 156 (2003) (citing Fischer v. Hooper, 143 N.H. 585,
590 (1999)).  Finally, "[i]t is only where the intrusion has
gone beyond the limits of decency that liability accrues."
Remsburg, 149 N.H. at 156 (quoting Hamberger, 106 N.H. at 111;
citing Restatement (Second) of Torts § 652B comment d at 380
(1977)).

Here, allegations that the Camps eavesdropped on a
telephone conversation between Lath and his psychiatrist on

11

November 30 are sufficient to state a claim for invasion of privacy.  However, regarding Lath's allegations that the Camps recorded him on a smartphone on November 22 outside his unit in a common area of the condominium, Lath has not alleged that the purported invasion of privacy involved an intrusion into anything secret or private.  Nor has he alleged conduct that went beyond the limitations of decency.  Accordingly, as to Count 6, Lath's motion for leave to amend should be granted but only to the extent that he may amend his FAC to include a claim for invasion of privacy based upon the Camps' alleged eavesdropping on his telephone conversation with his psychiatrist on November 30.

**D.    Count 7**

Proposed Count 7, labeled Cause 8 in Lath's SAC, is a claim for abuse of process that arises from an incident that took place on July 9, 2016, "when Lath was accompanied by Officer Derek Romano of the Elliot Police Department in Maine to serve a lawfully executed subpoena upon [the Camps]."  SAC ¶ 77.  Lath further alleges:

> Defendants alleged [to Officer Romano] that Lath "constantly harasses them" and Lath caused [Gail] Labuda's "illness and consequently her death".

> Defendants alleged that Lath's presence upon their property located at 28 Starboard Cove Road in

Maine was an act of threat and had Elliot Police
Department criminally trespass Lath.

Defendants in alleging such false claims intended
to stage evidence to construct a lawsuit against Lath
for defamation and harassment.

Such allegations were falsely provided to Law
enforcement in order to occupy Lath in a criminal
proceeding as Labuda's obituary indicated she died
because of cancer, much like her ex-husband Carl
Labuda Sr.

Despite their right to file reports with law
enforcement the defendants falsely alleged bald
allegations and did so to harass the Plaintiff.  Such
actions constituted abuse of legal process and/or
providing false information to law enforcement.

SAC ¶¶ 78-82.

New Hampshire recognizes a cause of action for abuse of

process.  Specifically:

"A party claiming abuse of process must prove the
following elements: (1) a person used (2) legal
process, whether criminal or civil, (3) against the
party (4) primarily to accomplish a purpose for which
it is not designed and (5) caused harm to the party
(6) by the abuse of process." Long v. Long, 136 N.H.
25, 29 (1992).  In order for a party to commit an
abuse of process, some court authority or jurisdiction
must be used.  See id. at 30 (process is some activity
or procedure involving the exercise of, or depending
upon the existence of, judicial authority).  An action
for abuse of process is concerned with the improper
use of process after it has been issued.  See id.
"The gravamen of the misconduct for which [liability
for abuse of process] is imposed is not the wrongful
procurement of legal process or the wrongful
initiation of criminal or civil proceedings . . . .
The subsequent misuse of the process, though properly
obtained, constitutes the misconduct for which the

13

liability is imposed."  Id. at 29-30 (quotation
omitted).

Tessier v. Rockefeller, 162 N.H. 324, 335 (2011) (parallel

citations omitted).  Here, while it appears that the Camps'

conversation with Officer Romano resulted in the issuance of a

No Trespass Notice that barred Lath from entering onto their

property, see Second Am. Compl., Ex. 16 (doc. no. 4-9), at 2 of

13, Lath does not allege that the Camps ever used that notice

against him to accomplish a purpose for which that process was

not designed, or that he was ever harmed by any such abuse of

process.  Accordingly, Lath has failed to state a claim upon

which relief can be granted for abuse of process.  For that

reason, as to Count 7, Lath's motion for leave to amend should

be denied.[5]

**E.    Count 8**

Proposed Count 8, labeled Cause 9 in Lath's SAC, is a claim

for malicious prosecution against Labuda's estate based upon a

---

[5] Lath states that the conduct underlying Count 7
"constituted abuse of legal process and/or providing false
information to law enforcement," SAC ¶ 82, but making a false
report to law enforcement is a criminal matter, see RSA 641:4,
not a basis for civil liability.  Moreover, because the Camps'
alleged false statements were directed to a law enforcement
officer, it does not appear that they could form the basis for a
defamation claim.  See McGranahan, 119 N.H. at 768-71.

stalking petition that Labuda filed against him in state court. With regard to the facts surrounding the filing of that petition, Lath alleges that: (1) "[o]n November 23, 2015 [Gail] Labuda petitioned the 9th Circuit Court for an ex-parte stalking order, narrating the same events as enumerated in [Officer] Choi's report," SAC ¶ 21; (2) in her "stalking petition . . . [Labuda] alleged that Lath['s] course of conduct pertaining to this stalking started on June 8, 2014," SAC ¶ 94; (3) "[d]efendant failed to address or provide any evidence during the stalking hearing held on December 22, 2015," SAC ¶ 86;[6] and (4) "[t]he stalking petition was dismissed where the trial court ruled that the 'Plaintiff has NOT been stalked as defined in RSA 633:3-a,'" SAC ¶ 24.

"In order to prevail on a civil malicious prosecution claim, the plaintiff must prove: (1) that he was subjected to a civil proceeding instituted by the defendant; (2) without probable cause; (3) with malice; and (4) that the proceedings

---

[6] In support of a previous pleading, Lath submitted the transcript of the hearing on Labuda's stalking petition. Labuda did not attend that hearing because she was in the hospital, see Second Am. Compl., Ex. 7 (doc. no. 4-4), at 4-5 of 75, and she died about six weeks later, see id., Ex. 18 (doc. no. 4-9), at 10 of 13. But Lath's counsel presented three witnesses, so it is difficult to see what Lath means by alleging that Labuda presented no evidence.

terminated in the plaintiff's favor."  <u>Paul</u>, 153 N.H. at 749

(citing <u>ERG, Inc. v. Barnes</u>, 137 N.H. 186, 190 (1993)).  Lath

has adequately alleged facts that satisfy the first and fourth

elements of a malicious prosecution claim arising from Labuda's

stalking petition, but he has failed to allege any facts to

support either of the other two elements of his claim.

The court has already described the second element, lack of

probable cause.  To prevail on the malicious prosecution claim

Lath asserts in Count 8, he must prove that when Labuda filed

her stalking petition, she did not possess knowledge that would

lead a reasonable person in her position to believe that she had

been the victim of conduct made unlawful by RSA 633:3-a.  To

state a claim, he must "set forth factual allegations, either

direct or inferential, respecting [that element of his claim.]"

<u>Lemelson v. U.S. Bank Nat'l Ass'n</u>, 721 F.3d 18, 21 (1st Cir.

2013) (quoting <u>United States ex rel. Hutcheson v. Blackstone</u>

<u>Med., Inc.</u>, 647 F.3d 377, 384 (1st Cir. 2011; citing <u>Gagliardi</u>

<u>v. Sullivan</u>, 513 F.3d 301, 305 (1st Cir. 2008)) (internal

quotation marks omitted).

For his part, Lath does not identify the legal requirements

for obtaining a stalking order, much less allege any facts

tending to show that Labuda's knowledge of his conduct would not

have lead a reasonable person in her positon to believe that he

had stalked her.  Rather, his claim rests upon: (1) conclusory

recitals of the probable-cause element of a malicious

prosecution claim, which is legally insufficient, see Labor

Rels. Div. of Constr. Indus. Of Mass. v. Healey, 844 F.3d 318,

327 (1st Cir. 2016) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009)); and (2) factual allegations that he appeared and

defended himself successfully at a hearing where Labuda

purportedly produced no evidence.  Leaving aside the fact that

Labuda's counsel presented testimony from three witnesses, see

Second Am. Compl., Ex. 7 (doc. no. 4-4), at 3 of 75, the facts

that Lath alleges do not go to Labuda's knowledge at the time

she filed her petition, which is the focus of the second element

of a malicious prosecution claim.  Because Lath has not alleged

facts to support the proposition that Labuda lacked probable

cause for filing her stalking petition, he has failed to state a

claim for malicious prosecution against her estate.  As the

court has already explained, the fact that Lath prevailed on

Labuda's stalking petition is necessary but not sufficient to

support his claim, and neither any disagreement Lath may have

with the facts Labuda alleged in her petition nor the weakness

of the case she presented in the circuit court is sufficient to

establish that she lacked probable cause to believe that Lath was stalking her at the time she filed her petition.[7]

Turning to the third element of Lath's claim, to prevail on Count 8, he must prove that Labuda "acted with malice, that is, with a purpose other than bringing a suspected offender to justice," McGranahan, 119 N.H. at 769 (citing W. Prosser, Torts § 119 (4th ed. 1971)), and to state a claim, he must set forth factual allegations respecting that element of his claim, see Lemelson, 721 F.3d at 21.  As with probable cause, Lath alleges no actual facts concerning Labuda's purpose for filing her stalking petition but merely asserts, in a conclusory manner, that "[t]he prosecution of this action was brought vindictively and for an ulterior motive; for the purpose of attempting to legally harass and to defame Plaintiff," SAC ¶ 88.  Lath's failure to adequately allege malice is a second reason why he has failed to state a claim for malicious prosecution against Labuda's estate.

---

[7] And, in an interesting twist, a factor that appears to have hampered Labuda at the hearing on her stalking petition, i.e., the lack of testimony from her, would appear to be even more debilitating to Lath's malicious prosecution claim, given that both the second and third elements of such a claim would require him to establish Labuda's state of mind.

Because Lath has failed to allege facts supporting either the second or third elements of his claim for malicious prosecution, Count 8 does not state a claim upon which relief can be granted.  For that reason, as to Count 8, Lath's motion for leave to amend should be denied.

**F.    <u>Count 9</u>**

Proposed Count 9, labeled Cause 10 in Lath's SAC, asserts a claim against:

> Cynthia Schadler Camp, Michael Camp, Gail Labuda thru
> Cheryl Greenough as the executrix for the estate of
> Labuda, Oak Brook condominium Owners' association, its
> members and its board members, past and present, and
> its employees, Robert Smith, Scott Sample, Vickie
> Grandmaison, William Morey, Chris Klardie, Dorothy
> Vachon and members of Vachon's family; Daryl and
> Michelle Caron, in order to obstruct the orderly
> administration of justice and deprive Lath of his
> right for equal protection of the Laws of the United
> States [by acting in] a conspiracy . . . and
> intimidating Lath and the witnesses before the several
> proceedings pending before the New Hampshire
> Commission for Civil Rights and therefore a violation
> of 42 USC § 1985 (2) and (3).

SAC ¶ 109 (boldface in the original).  As Judge McCafferty explained in another one of Lath's cases, "Section 1985 concerns conspiracies to violate civil rights."  <u>Lath v. Oak Brook Condo. Owners' Ass'n</u>, No. 16-cv-463-LM, 2017 WL 1051001, at *11 (D.N.H. Mar. 20, 2017) (quoting <u>Diaz v. Perez</u>, Civ. Action No. 16-cv-11860-RGS, 2016 WL 6871233, at *7 (D. Mass. Nov. 21, 2016)).

Class-based invidiously discriminatory animus is an essential element of a claim under 42 U.S.C. § 1985(2).  See Powell v. Massachusetts, Case No. 16-cv-30004-MGM, 2016 WL 7115887, at *11 (D. Mass. Sept. 20, 2016) (citing Bolduc v. Town of Webster, 629 F. Supp. 2d 132, 150-51 (D. Mass. 2009); Greco v. Fitzpatrick, 59 F.3d 164, 1995 WL 373108, at *1 (1st Cir. 1995) (unpublished table decision)).  Class-based invidiously discriminatory animus is also an essential element of a claim under 42 U.S.C. § 1985(3).  See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (citing Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).  Nowhere does Lath allege that any of the conduct on which Count 9 is based was motivated by class-based invidiously discriminatory animus.  Accordingly, Count 9 does not state a claim upon which relief can be granted.  For that reason, as to Count 9, Lath's motion for leave to amend should be denied.

**G.    Summary**

If the district judge adopts this report and recommendation, these will be Lath's claims moving forward:

Count 1: a claim brought through 42 U.S.C. § 1983 against the City for violating Lath's rights under the Fourth Amendment during the course of his interaction with Officers Choi and Goodman on November 22, 2015.

Count 2: a claim against the City for trespass, based upon the actions of Officers Choi and Goodman on November 22, 2015.

Count 3: a claim against the City for negligent failure to preserve the 911 recording of Cynthia Camp's November 22, 2015, call to the MPD.

Count 5: a claim under RSA 570-A:11 against the Camps arising from their alleged eavesdropping and/or recording on November 22 and November 30, 2015.

Count 6: a claim for common-law invasion of privacy against the Camps arising from their alleged eavesdropping and/or recording on November 30, 2015.

### **Conclusion**

For the reasons detailed above, Lath's motion for leave to amend, document no. 16, should be granted as to Count 5 and the portion of Count 6 that pertains to the November 30, 2015, incident, and should be denied as to Counts 4, 7, 8, and 9, and the portion of Count 6 that pertains to the November 22, 2015, incident.

Any objection to this Report and Recommendation must be filed within 14 days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file an objection within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by

district court; issues not preserved by such objection are
precluded on appeal).

_Andrea K. Johnstone_
Andrea K. Johnstone
United States Magistrate Judge

October 4, 2017

cc:  Sanjeev Lath, pro se
     Samantha Dowd Elliot, Esq.
     Robert J. Meagher, Esq.