```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW HAMPSHIRE
```

Sanjeev Lath

    v.                                      Civil No. 17-cv-75-JL
                                              Opinion No. 2018 DNH 205

Cynthia Schadler Camp &
Michael Camp

**MEMORANDUM ORDER**

In one of several actions he has pending in federal court,[1] pro se plaintiff Sanjeev Lath alleges that Cynthia and Michael Camp committed common-law invasion of privacy and violated New Hampshire Revised Statutes Annotated § 570-A:11 by videotaping him without his permission on two occasions. As both claims arise under state law, this court only has subject-matter jurisdiction to the extent permitted by 28 U.S.C. § 1332. That statute bestows federal district courts with diversity jurisdiction over actions between citizens of different states when the amount in controversy exceeds $75,000. See 28 U.S.C.

---

[1] See Lath v. Vallee, No. 16-cv-463-LM (D.N.H. filed Oct. 18, 2016); Lath v. Manchester Police Department, No. 16-cv-534-LM (D.N.H. filed Dec. 15, 2016); Lath v. PennyMac Loan Services, No. 1:18-cv-10741-LTS (D. Mass. filed May 2, 2018); Lath v. Defense Contract Management Agency, No. 18-cv-611-LM (D.N.H. filed July 6, 2018); Lath v. Mattis, No. 18-cv-686-JL (D.N.H. filed Aug. 3, 2018); Lath v. PennyMac Loan Services, LLC, No. 18-cv-928-PB (D.N.H. Filed Oct. 10, 2018).

§ 1332(a)(1). The court has challenged whether the amount in controversy in this case exceeds the jurisdictional threshold.

Both parties briefed this issue, and the court heard oral argument. Concluding that Lath has not demonstrated that his claims meet this jurisdictional amount, the court dismissed this case after the hearing for want of subject-matter jurisdiction. This order sets forth the bases for that dismissal in greater detail. See, e.g., United States v. Joubert, 980 F. Supp. 2d 53, 55 n.1 (D.N.H. 2014), aff'd, 778 F.3d 247 (1st Cir. 2015) (citing In re Mosley, 494 F.3d 1320, 1328 (11th Cir. 2007)) (noting a district court's authority to later reduce its prior oral findings and rulings to writing).

I. **Applicable legal standard**

As noted, a federal district court only has diversity jurisdiction over an action when two statutory prerequisites are met: the plaintiff and the defendants must be citizens of different states and the amount in controversy must exceed $75,000. See 28 U.S.C. § 1332(a)(1). The party seeking to invoke diversity jurisdiction has the burden of demonstrating that both requirements are met. Spielman v. Genzyme Corp., 251 F.3d 1, 5 (1st Cir. 2001). Although Lath alleges that the events underlying his claims all occurred at an apartment complex in New Hampshire, he contends (and the Camps do not

2

dispute) that he resides in New Hampshire and they in Maine. Thus, the court limits its inquiry to whether the amount in controversy meets the jurisdictional minimum.

When a plaintiff's complaint includes an ad damnum clause, that sum controls "if the claim is apparently made in good faith." Abdel-Aleem v. OPK Biotech LLC, 665 F.3d 38, 41 (1st Cir. 2012) (brackets and citations omitted). "Good faith is measured objectively; the question is whether to anyone familiar with the applicable law this claim could objectively have been viewed as worth more than the jurisdictional minimum." Id. (brackets, ellipsis, internal quotation marks, and citations omitted). "It must appear to a legal certainty that a claim is really for less than the jurisdictional amount to justify dismissal." Id.

While federal courts "have a responsibility to police the borders of federal jurisdiction," this determination "should be done quickly, without extensive fact-finding inquiry." Spielman, 251 F.3d at 4 (citations omitted). "A plaintiff's general allegation of damages that meet the amount requirement suffices unless questioned by the opposing party or the court." Abdel-Aleem, 665 F.3d at 41-42 (internal quotation marks and citation omitted). Once challenged, however, "the party seeking to invoke jurisdiction has the burden of alleging with sufficient particularity facts indicating that it is not a legal

certainty that the claim involves less than the jurisdictional amount." Id. at 42 (internal quotation marks and citation omitted).

## II. Background

### A. Procedural history

Lath originally brought this action in state court, alleging state-law claims against the City of Manchester.[2] With the City's assent, Lath amended his complaint to include a federal claim against the City under 42 U.S.C. § 1983.[3] The City then removed the case to this court under 28 U.S.C § 1446.[4]

Following removal, Lath filed an amended complaint in which he for the first time named the Camps as defendants.[5] Judge Johnstone reviewed that complaint and recommended that it be dismissed without prejudice because Lath filed it without first seeking leave from the court as required by Federal Rule of Civil Procedure 15(a)(2).[6] The court approved that recommendation and dismissed the amended complaint without

---

[2] See doc. no. 1-1 at 2-3.

[3] See id. at 4-21.

[4] Doc. no. 1.

[5] Doc. no. 4.

[6] May 9, 2018 Report & Recommendation (doc. no. 8) at 3-4.

prejudice.[7]  Lath then moved for leave to amend his complaint to add numerous defendants, including the Camps.[8]

The court referred that motion to Judge Johnstone, who recommended that it be denied as to all defendants other than the City and the Camps.[9]  As to the City, Judge Johnstone recommended that Lath be allowed to proceed on a § 1983 claim for a Fourth Amendment violation and state-law claims for trespass and failure to preserve a 911 recording.[10]  She further recommended that Lath be allowed to amend his complaint to allege claims against the Camps for common-law invasion of privacy and violations of New Hampshire Revised Statutes § 570-A:11, the New Hampshire wiretapping statute.[11]  The court approved those recommendations in full,[12] thereby making Lath's First Amended Complaint the operative pleading in this case.[13]

---

[7] June 1, 2018 Order (doc. no. 15).

[8] Doc. no. 16.

[9] See Oct. 4, 2017 Report & Recommendation (doc. no. 30) at 20-21.

[10] See id.

[11] See id. at 21.

[12] Nov. 7, 2017 Order (doc. no. 31).

[13] See First Amend. Compl. (doc. no. 16-1).

The Camps and the City both timely moved to dismiss.[14] The court dismissed Lath's § 1983 claim against the City, concluding that Lath had not alleged a municipal policy or custom as required by Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).[15] The court declined supplemental jurisdiction over Lath's attendant state-law claims against the City.[16] In deference to Lath's pro se status, however, the court refrained from dismissing Lath's claims against the Camps, concluding that Lath had minimally alleged common-law invasion of privacy and violations of the wiretapping statute and that, when taken at face value, his complaint contained facts establishing diversity jurisdiction over those claims under § 1332(a).[17] The court nevertheless noted its skepticism that Lath could recover more than $75,000 against the Camps, and accordingly directed Lath to show cause that this jurisdictional minimum was met.[18]

Lath filed several documents in response to the show-cause order. He initially addressed this issue in his motion to

---

[14] See doc. no. 46 (Camps); doc. no. 48 (City).

[15] May 15, 2018 Order (doc. no. 78) at 5-8.

[16] Id. at 8.

[17] Id. at 9; May 15, 2018 Order (doc. no. 77) at 4-8.

[18] May 15, 2018 Order (doc. no. 78) at 10-12.

6

reconsider the order to dismiss the City.[19]  Though the court denied that motion, it indicated that it would consider Lath's amount-in-controversy arguments when resolving whether it had subject-matter jurisdiction over his claims.[20]  Lath also filed a response to the show-cause order,[21] an affidavit in further support of diversity jurisdiction,[22] and a reply memorandum.[23]  The Camps filed a single response to the show-cause order.[24]

The court scheduled a hearing for August 30, 2018.  Two weeks before that hearing, Lath moved to appear by telephone, indicating that he lived in Nashua without available transportation to Concord.[25]  The court granted that motion in part and, as a convenience to Lath, held the hearing at the Hillsborough County Superior Court in Nashua.[26]  Both Lath and the Camps' counsel presented arguments at the hearing.

---

[19] Doc. no. 84 at 7-10.

[20] Aug. 1, 2018 Endorsed Order.

[21] Doc. no. 90.

[22] Doc. no. 94.

[23] Doc. no. 95.

[24] Doc. no. 91.

[25] Doc. no. 98.

[26] See Aug. 23, 2018 Endorsed Order.

B.   Allegations against the Camps

Lath's allegations against the Camps can be summarized succinctly. Lath contends that on November 22, 2015, as he entered his residence with his friend Barbara Belware, he got into an altercation with the Camps after Cynthia Camp falsely reported to the Manchester Police Department that Lath had kicked a door.[27] Lath contends that during that altercation, Michael Camp recorded Lath and Belware on his cell phone.[28] Lath alleges that the Camps again recorded him on their cell phones on November 30, 2015, as Lath was returning from work and entering his unit.[29] Lath alleges that he was on the phone with his psychiatrist at the time and that the Camps continued to record him after he asked them to stop.[30] He alleges that Cynthia Camp later admitted to making the recordings during a hearing in state court.[31]

Lath alleges, without elaboration, that the Camps used the contents of the recordings to belittle him, spread rumors about

---

[27] First Amend. Compl. (doc. no. 16-1) ¶¶ 13-14

[28] Id. ¶ 14.

[29] Id. ¶ 22.

[30] Id. ¶¶ 22, 65.

[31] Id. ¶ 23.

8

him, and otherwise assassinate his character.[32] He further contends, again in summary fashion, that he suffered "shame, anguish, despair, mental shock, humiliation, feelings of being violated, emotional distress, hurt feelings, [and disturbance of] peace of mind . . . in an amount in excess of the jurisdiction limits of this Court."[33] He seeks to recover equitable, incidental, compensatory, enhanced compensatory, and punitive damages from the Camps.[34] He specifically requests $2 million in damages for each cause of action.[35]

### III. **Analysis**

When, as here, the court challenges whether the amount in controversy is met, "the party seeking to invoke jurisdiction has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount." Abdel-Aleem, 665 F.3d at 41-42. There are three general circumstances that clearly meet the legal certainty standard:

> 1) when the terms of a contract limit the plaintiff's possible recovery to less than the required jurisdictional amount; 2) when a specific rule of substantive law or measure of damages limits the amount of money recoverable

---

[32] Id. ¶ 67.

[33] Id. ¶ 73.

[34] Id. ¶ 9.

[35] Id. at 35.

9

> by the plaintiff to less than the necessary number of dollars to satisfy the requirement; and 3) when independent facts show that the amount of damages claimed has been inflated by the plaintiff merely to secure federal court jurisdiction.

14AA Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 3713 (4th ed. 2018) (and cases cited therein). As Lath uses this framing device in his briefing, the court will do the same. And because the first two circumstances plainly do not apply here, the court limits its inquiry to the third.

As an initial matter, Lath argues that he has satisfied the amount-in-controversy requirement because he initially filed this case in superior court and that court has a significantly lower jurisdictional threshold. See N.H. Rev. Stat. Ann. §§ 491:7; 502-A:14. This argument is a nonstarter. "Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." Gunn v. Minton, 568 U.S. 251, 256 (2013) (citation and internal quotation marks omitted). In the present context, Congress has only bestowed federal district courts with subject-matter jurisdiction when both requirements of 28 U.S.C. § 1332(a) are met. The superior court's jurisdictional minimum is therefore irrelevant to the court's inquiry.

Seemingly aware of this, Lath's remaining arguments focus on the more-than-$75,000 jurisdictional minimum. First, he

contends that he has met this minimum because (1) he requested $475,000 in damages in his original state-court complaint against the City, (2) he requested $2 million per claim in his amended complaint filed in this court, and (3) he subsequently sent the Camps a $10 million settlement demand. As this court has previously explained to Lath, however,[36] an ad damnum clause in a complaint is insufficient on its own to satisfy the amount-in-controversy requirement when the claimed damages "are questioned by the opposing party or the court." Abdel-Aleem, 665 F.3d at 41-42 (citations omitted). The court may challenge such demands when they do not appear to be made in objective good faith. Id. at 41. Similarly, while a settlement demand is "relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim," even then it is not dispositive. Ramchandra v. Amtrak Nat. R.R. Corp., 345 F. Supp. 2d 33, 34 (D. Mass. 2004) (internal quotation marks omitted) (quoting Cohn D.V.M. v. Petsmart, Inc., 281 F.3d 837, 840 (9th Cir. 2002)); see also Doughty v. Hyster New England, Inc., 344 F. Supp. 2d 217, 219 (D. Me. 2004) ("[A] settlement demand is not the sole determinative factor to

---

[36] See Aug. 1, 2018 Endorsed Order; May 15, 2018 Order (doc. no. 78) at 10.

11

consider when assessing the jurisdictional amount in controversy.").

The court challenged the amount in controversy in this case in part because it did not believe, based on the allegations in Lath's First Amended Complaint, that the ad damnum clauses reflected reasonable or good faith estimates of the value of Lath's remaining claims. In response, Lath has failed to explain how he could recover anywhere near the amounts requested in those clauses, let alone an award approaching his $10 million settlement demand. The court therefore concludes that the ad damnum clauses and the settlement demand do not meet Lath's burden with respect to the amount in controversy. Lath must accordingly point to facts to support his damages claim. See Abdel-Aleem, 665 F.3d at 41-42

Lath attempts to do so by arguing that he is entitled to actual and punitive damages in an amount exceeding $75,000. While Lath could receive both types of damages if he prevailed on his claims, see, e.g., N.H. Rev. Stat. Ann. § 570-A:11, it is difficult to conceive, based on his factual allegations, how any such award could ever exceed the jurisdictional threshold. As the court explained at the hearing, those allegations, though minimally sufficient to survive a Rule 12 motion, do not reflect the sort of conduct that would support a significant actual damages award, let alone a jury instruction for punitive

damages.  Lath's briefing in response to the show-cause order is similarly silent as to how he was damaged by the Camps.[37]  Thus, Lath's written filings do not satisfy his burden with respect to the amount in controversy.

Cognizant of Lath's pro se status, the court held a hearing to give Lath an additional opportunity to explain how the Camps' conduct harmed him.  He was unable to do so.  For instance, while Lath contended that he no longer felt safe speaking on the phone in his home, he conceded that he was in the common area at his condominium when the Camps recorded him.  As the court explained at the hearing, this undermines any causal connection between the Camps' actions and the alleged harm.[38]  Similarly, Lath contended that he suffered "emotional damages" because he was no longer able to live in his house, but conceded that this was due to a restraining order unrelated to the alleged recordings.[39]  When the court pressed Lath on how the Camps

---

[37] In his briefing, Lath references other events not previously pleaded in this case.  Lath has not sought leave to amend his complaint to allege these events, and the court would not be inclined to permit an amendment at this juncture, as Lath has already amended his complaint multiple times and discovery closed in May, several months before Lath filed his briefing.  Thus, as discussed at the hearing, the court does not consider these references as part of its present analysis.  See Hearing Transcript (hereinafter "Tr.") at 15.

[38] Tr. at 16-17.

[39] Id. at 30-32

13

belittled him, spread rumors about him, or assassinated his character, he was unable to provide any cogent explanation. He was likewise unable to articulate any specific instances of shame, anguish, despair, mental shock, humiliation, feelings of being violated, emotional distress, hurt feelings, or disturbance of peace of mind attributable to the Camps.

Instead, Lath admitted several times on the record that this case was "never about damages."[40] While the court appreciates Lath's honesty, this admission, when coupled with Lath's inability to explain any harm caused by the Camps' actions, is dispositive. In short, the court is convinced, based on this admission and all the reasons stated above, that it is a legal certainty that the amount-in-controversy requirement is not met in this case. This court therefore does not have subject-matter jurisdiction over this action under 28 U.S.C. § 1332. As there is no other basis for federal jurisdiction, Lath's claims against the Camps must be dismissed.

IV. <u>Conclusion</u>

"[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions

---

[40] Id. at 45. Lath later conceded that "[n]one of [his] lawsuits that are pending have litigated so far was ever about monetary damages." Id. at 47 (none of his lawsuits are about damages).

that the parties either overlook or elect not to press." Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434, 131 S. Ct. 1197, 1202 (2011). Not persuaded Lath's damages requests in this case were made in good faith, the court challenged whether the amount in controversy exceeded the threshold for diversity jurisdiction. It was Lath's burden to "alleg[e] with sufficient particularity facts indicating that it is not a legal certainty that [his] claim[s] involve[] less than the jurisdictional amount." Abdel-Aleem, 665 F.3d at 42. He was unable to do so, ultimately conceding that this case was not about damages in the first place. The court accordingly concludes that the amount-in-controversy requirement is not met and DISMISSES Lath's claims for want of subject-matter jurisdiction.

The clerk of court shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: October 16, 2018

cc: Sanjeev Lath, pro se
    Sabin Maxwell, Esq.

15